JOHN C. O'BRIEN, Respondent, *v.* FRANK V. FLECKENSTEIN and Others, Defendants, Impleaded with WILLIAM B. MORSE and Others, Composing the Firm of WILLIAM B. MORSE & SONS, Appellants. (No. 3.)

*Purchase-money mortgage — it has not priority over a subsequent mortgage, first recorded, given to a creditor who, in consideration thereof, extends the time of payment of a pre-existing debt — such priority is not affected by the institution of bankruptcy proceedings against the mortgagor within four months.*

A purchase-money mortgage, given upon the sale of real estate, is a prior lien to a mortgage subsequently executed by the grantee for the sole purpose of securing an antecedent debt, although the last-mentioned mortgage is recorded prior to the purchase-money mortgage.

In such a case the holder of the mortgage given to secure the antecedent debt is not a purchaser for a valuable consideration within the meaning of the Recording Act (Laws of 1896, chap. 547, § 241).

Where, however, the mortgage given to the creditor was not given for the sole purpose of securing the antecedent indebtedness, but in consideration of an express, unequivocal agreement on the part of the creditor to extend for one month the time for the payment of such indebtedness, the holder of such mortgage is a subsequent purchaser for a valuable consideration within the meaning of the Recording Act, and his mortgage constitutes a lien prior to that of the purchase-money mortgage.

The fact that the mortgagor was insolvent at the time he executed the mortgage to the creditor, and that he was adjudged a bankrupt within four months after executing such mortgage and that subdivision f of section 67 of the Bankruptcy Act provides that liens obtained against an insolvent person within four months prior to the time when he is declared a bankrupt shall be void, does not affect the creditor's right to priority, it appearing that none of the parties knew that the mortgagor was insolvent at the time he executed the mortgage and there being no suggestion that the mortgage was given in contemplation of bankruptcy.

Appeal by the defendants, William B. Morse and others, composing the firm of William B. Morse & Sons, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Monroe on the 16th day of March, 1903, upon the decision of the court, rendered after a trial at the Monroe Special Term, decreeing a sale in foreclosure of the property described in the complaint, and adjudging the lien of plaintiff's, respondent's, mortgage to be superior to that of the appellants.

*John P. Morse,* for the appellants.

*Hugh J. O'Brien,* for the respondent.

Spring, J. :

The gist of this controversy is to determine which of two mortgages covering the same premises is the superior lien.

On the 9th day of July, 1902, the plaintiff sold to the defendant Frank V. Fleckenstein, for $1,300 the premises described in the complaint taking back as security for the entire purchase price the bond of the grantee and his mortgage on said premises due in three months from its date. The mortgage was not recorded until November twenty-fifth following. There was paid on the bond and mortgage the sum of $500.

The defendants Morse are lumber dealers carrying on business under the firm name of W. B. Morse & Sons. They sold lumber to Frank V. Fleckenstein, and on the 17th day of November, 1902, he owed the firm $2,700 and was being pressed for payment. On that day he gave to them a note for $1,350 due in one month secured by a mortgage for a like sum on the premises described in the complaint and the residue of the debt was secured in another way. This mortgage was recorded November 18, 1902, or before the mortgage of the plaintiff. The second mortgagees knew nothing of the plaintiff's mortgage lien. By section 241 of the Real Property Law (Laws of 1896, chap. 547) a conveyance not recorded " is void as against any subsequent purchaser in good faith and for a valuable consideration from the same vendor  *  *  *  of the same real property  *  *  *  whose conveyance is first duly recorded," and the term " conveyance " includes a mortgage. (§ 240.)

The court has found as a fact that the note and mortgage given to the defending mortgagees were intended to secure a pre-existing indebtedness and no new consideration was imported into the transaction. The only question, therefore, is whether this finding is supported by the evidence, for if the sole purpose of the note and mortgage was to secure an antecedent debt, then the appellants are not mortgagees for a valuable consideration within the meaning of the Recording Act. (*Young* v. *Guy*, 87 N. Y. 457; *Breed* v. *National Bank*, 57 App. Div. 468; affd., 171 N. Y. 648; Thomas Mort. [2d ed.] § 482.)

At the time of the giving of the note and mortgage the entire indebtedness represented by it had been overdue for a month or two. It appears, however, that Fleckenstein, the mortgagor, was engaged in the construction of houses, one on the said premises, and when payment was demanded he asked for more time. The defendant William S. Morse, in his narration of what then occurred, testified: "He (Fleckenstein) said: 'If you will give me an extension of time till I can finish the houses, I can pay you.' I told him I would give him an extension of time provided he would give me security for the account. I told him I would take notes for the account, and make them long enough to complete the houses, if he would give me collateral security for the payment of the notes."

Later he met the mortgagor and his attorney and the note and mortgage were prepared. At that time Fleckenstein said he wanted a month in which to complete the house on this property, and the defendant consented to this extension. He further testified that the notes settled the account, "and the account was paid in full by the notes, as our books will show." Again that he agreed to extend the time of payment if the security were given. George V. Fleckenstein, the attorney for Frank, drew the note and mortgage, and testified that when Frank was asked how much time he wanted, replied, "'Long enough to finish the house,' and he thought a month would be sufficient for that."

He also testified: "The amount of extension he was to get had been talked between them. It was to be sufficient to enable him to complete the house. Morse asked him how much time he wanted for that purpose, and he said one month would be sufficient."

The mortgagor testified that Morse wanted the money on the

account, and that he was unable to pay. Whereupon Morse agreed to extend the time of payment if security was given, and that was then agreed upon. Fleckenstein said he could finish this house in one month, and wanted an extension for that time, and the note and mortgage were then drawn due in one month.

If these witnesses correctly described the consideration of the note and mortgage, they were not intended wholly to secure an antecedent indebtedness, but the appellants surrendered an existing right. They could have proceeded to enforce their claim or filed a mechanic's lien, but they consented to waive these rights and extend the time of payment in consideration of receiving security. They forebore any right they had to collect the account. This constituted a valuable consideration. (*Meltzer* v. *Doll*, 91 N. Y. 365; *Breed* v. *National Bank*, 57 App. Div. 468, 473; affd., 171 N. Y. 648; *Mechanics & Farmers' Bank of Albany* v. *Wixson*, 42 id. 438; Thomas Mort. [2d ed.] § 482.)

In *Cary* v. *White* (52 N. Y. 138) the court say (at p. 142): "If there was an extension of time for a single day by a valid agreement, as a consideration of the mortgage, there was a valuable consideration within the rule."

The respondent's counsel testified that in December following the giving of the mortgage William S. Morse, one of the appellants, informed him that the mortgage was given to secure the outstanding debt and that he had not agreed to "extend the time of payment of the original debt; * * * that he supposed the taking of the note and the mortgage operated as an extension of the time of payment." A different construction is given to this conversation by William P. Morse and also by his attorney. The former testified that the plaintiff's counsel was endeavoring to induce the defendants to defer foreclosing this mortgage, and asked if there was any agreement to extend the time, and Morse, understanding the reference was to the note and mortgage, replied in the negative. The attorney Morse said O'Brien asked directly if there was an agreement to extend the time of payment of the note and mortgage and that the defendant answered there was no such agreement. In view of the fact that the admission of a party is liable to be misapprehended, and that the version of this conversation by the defendant and his attorney is entirely reasonable and consistent,

we think this evidence is insufficient to overthrow the positive testimony of all the witnesses who took part in the transaction out of which the note and mortgage of the appellants arose.

The conversation with the appellants' attorney is of no consequence, and, if it were, would not bind his clients.

The story of the appellants bears the stamp of probability. Fleckenstein was seeking time. He was desirous of completing the house, evidently expecting to get the money therefrom to meet this liability. The giving of additional security in his straitened circumstances would be of no avail unless he secured the forbearance which is the one desideratum for a man struggling against financial ruin. He stipulated for that one condition and it was granted to him. This constituted an express unequivocal agreement to extend the time of payment of the indebtedness, and beyond that merged it in the note and mortgage comprising the valuable consideration necessary to bring the defendants within the "subsequent purchaser" mentioned in the Recording Act. Fleckenstein was then insolvent, although none of the parties now in controversy knew of it, and in December was adjudged a bankrupt. With this fact established, the respondent insists that no lien the defendants could have obtained on the seventeenth of November would have been of any benefit to them. Subdivision f of section 67 of the Bankruptcy Law (30 U. S. Stat. at Large, 565) provides that judgments "or other liens obtained through legal proceedings against a person who is insolvent at any time within four months prior to the filing of a petition in bankruptcy against him shall be deemed null and void in case he is adjudged a bankrupt." We must, however, consider the transaction as the facts were at the time the note and mortgage were given. There is no suggestion that these securities were taken in contemplation of bankruptcy.

Nor do we find the equities with the respondent so overwhelmingly as his counsel seems to believe. Fleckenstein was erecting a house on these premises out of material apparently sold to him by the appellants. He was thus enhancing the value and adding to the security of the plaintiff. When the note and mortgage were given the respondents' mortgage had not been recorded. Had the defendants filed a lien for materials furnished, it would have been prior to the lien of the plaintiff. (Lien Law [Laws of 1897, chap. 418], § 13;

*Lemmer* v. *Morison,* 89 Hun, 277.) It seems to us that the evidence very strongly preponderates in favor of the appellants, and the judgment should accordingly be reversed.

All concurred.

Judgment reversed and new trial ordered, with costs to the appellants to abide event upon questions of law and of fact.